**MEIJER STORES LIMITED PARTNERSHIP,**
Petitioner,

v.

**Betty SMITH, Wayne Township Assessor, Michael Statzer, Wayne County Assessor, and Wayne County Property Tax Assessment Board of Appeals, Respondents.**

No. 49T10–0609–TA–89.

Tax Court of Indiana.

March 26, 2010.

Stephen H. Paul, Jon B. Laramore, Brent A. Auberry, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Jennifer E. Gauger, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondents.

FISHER, J.

On August 16, 2006, the Indiana Board of Tax Review (Indiana Board) issued a final determination valuing the real property of Meijer Stores Limited Partnership (Meijer) for the 2002, 2003, and 2005 tax years (the years at issue). Meijer now challenges that final determination.

### RELEVANT FACTS AND PROCEDURAL HISTORY

At some point during 2000, Meijer opened a 158,114 square foot discount retail store/supermarket (i.e., a Meijer store)

in Richmond, Indiana. The store and its adjacent parking lot were situated on approximately 26 acres of land.

After receiving its assessments for the years at issue, Meijer timely filed Petitions for Review (Form 130s) with the Wayne County Property Tax Assessment Board of Appeals (PTABOA) because it believed its assessments were too high. The PTABOA subsequently valued Meijer's property as follows: for the 2002 tax year $10,954,800 ($4,347,700 for land and $6,607,100 for improvements); for the 2003 tax year $12,420,400 ($5,813,300 for land and $6,607,100 for improvements); and for the 2005 tax year $12,132,000 ($5,524,900 for land and $6,607,100 for improvements).

Thereafter, Meijer timely filed Petitions for Review (Form 131s) with the Indiana Board. The Indiana Board held a hearing on the Form 131s on March 16, 2006. During the hearing, Meijer presented an appraisal to show that the market value-in-use of its property was only $6,300,000 during the years at issue.[1] (See Cert. Admin. R. at 232–313 (footnote added).)

The appraisal, which was prepared by Lawrence A. Mitchell, an MAI appraiser,[2] was completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP) and employed the cost approach, the income approach, and the sales comparison approach to estimate the value of Meijer's property.[3] In reconciling the estimates of value, Mitchell explained that the number of market transactions led him to conclude that the estimate of value derived from the sales comparison approach was the most reliable. (See Cert. Admin. R. at 294.) Mitchell further explained that he placed less emphasis on the income approach estimate because that approach was most suitable for build-to-suit or rental properties and Meijer's property was not a build-to-suit property nor was it currently being used for rental purposes. (See Cert. Admin. R. at 273–74, 440–41.) In contrast, the Wayne County Assessor, the Wayne Township Assessor, and the PTABOA (collectively, "Wayne County") presented no evidence during the Indiana Board hearing.[4]

1. In Indiana, real property is assessed on the basis of its "market value-in-use." See IND. CODE ANN. § 6-1.1-31-6(c) (West 2002); 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (hereinafter, "Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.3-1-2 (2002 Supp.)) at 2. A property's market value-in-use is its value "for its current use, as reflected by the utility received by the owner or a similar user, from the property." Manual at 2.

2. Mitchell is also a licensed Indiana appraiser and is certified as a Level II assessor-appraiser in Indiana. (See Cert. Admin. R. 308, 409–10.)

3. The cost approach "estimates the value of the land as if vacant and then adds the depreciated cost new of the improvements to arrive at a total estimate of value." Manual at 3. The sales comparison approach "estimates the total value of the property directly by comparing it to similar, or comparable, properties that have sold in the market." Id. The income approach "converts an estimate of income, or rent, [a] property is expected to produce into value through a mathematical process known as capitalization." Id. "All three of these approaches, when properly processed, should produce approximately the same estimate of value." Id.

4. More specifically, during the hearing, Meijer objected to the admittance of the documentary and testimonial evidence offered by Wayne County because it had not complied with 52 IAC 2-7-1. (See Cert. Admin. R. at 403–07.) See also 52 IND. ADMIN. CODE 2-7-1(b)(1) (2006) (see http://www.in.gov/legislative/iac/) (providing that Wayne County needed to provide Meijer with "[c]opies of [its] documentary evidence and summaries of [any] statements of testimonial evidence at least five (5) business days before the hearing"). Wayne County admitted that it had not complied with the rule; therefore, the Indiana Board sustained the objection. (See Cert. Admin. R. at 150–51 ¶ 18(A).)

In its final determination, the Indiana Board rejected the sales comparison and income approach analyses because they utilized properties that were not in fact "comparable" to the subject property. (*See* Cert. Admin. R. at 158–60 ¶¶ 26–28.) The Indiana Board also discounted a portion of the appraisal's cost approach. Specifically, the Indiana Board rejected Meijer's obsolescence analysis because it found that Meijer did not establish that its property was subject to the market forces that caused certain retail properties to lose value. (*See* Cert. Admin. R. at 161–63 ¶¶ 31–32.) Consequently, the Indiana Board held that Meijer's cost approach analysis only prima facie established that the market value-in-use of its property was "no more than ... $10,323,600[.]" (Cert. Admin. R. at 164 ¶ 35.)

On September 27, 2006, Meijer initiated this original tax appeal. The Court heard the parties' oral arguments on March 17, 2008. Additional facts will be supplied as necessary.

### ISSUES

In its appeal to this Court, Meijer asserts that the Indiana Board erred in rejecting its obsolescence analysis and its sales comparison analysis, as there was no evidence in the record that indicated that the analyses were unreliable. (*See, e.g.,* Pet'r Br. at 15–19; Oral Argument Tr. at 10, 38–39.) In contrast, Wayne County asserts that the Indiana Board's final determination is proper, as the Board simply fulfilled its statutory duties: it evaluated Meijer's evidence and properly determined that several parts of the appraisal were entitled to no weight.[5] (*See, e.g.,* Resp'ts

---

5. Meijer presented no specific argument as to the Indiana Board's rejection of its income approach analysis. Wayne County presented no argument as to the propriety of the

Br. at 7–17; Oral Argument Tr. at 28–30, 36–37 (footnote added).)

### ANALYSIS AND OPINION

#### Standard of Review

█ When this Court reviews a final determination of the Indiana Board, it is limited to determining whether it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e) (West 2010). The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.,* 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

#### Discussion

I. *The Indiana Board's rejection of Meijer's sales comparison analysis*

█ Indiana's assessment Manual provides that the sales comparison approach may be used to determine the market value-in-use of property "[w]hen others could feasibly use the property for the same general commercial or industrial purpose, e.g.[,] light manufacturing [or] general retail[.]" 2002 REAL PROPERTY ASSESSMENT

---

Indiana Board's evidentiary ruling. *See supra* note 4. Therefore, the Court will not address those issues on appeal.

MANUAL (2004 Reprint) (hereinafter, "Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 4. The Manual provides that the sales comparison approach "is based on the assumption that potential buyers will pay no more for the subject property ... than it would cost them to purchase an equally desirable substitute [ ] property already existing in the market place." *Id.* at 13.

The Indiana Board rejected Meijer's sales comparison analysis because it believed that the properties Mitchell used as comparables were not truly comparable to Meijer's property. *See supra* p. 1135–36. Specifically, the Indiana Board stated:

> [Mitchell used] sale[s] of vacant and abandoned Walmart and Lowe's stores to [ ] secondary users [such] as Big Lots as comparable[s. Mitchell] admitted, however, that the subject property was built for Meijer's own use.... Mitchell testified that comparable users of [big-box] retail stores [6] were retail stores like Lowe's, Home Depot and Walmart. He testified, however, that those retailers would not buy an existing [big-box] store, but instead ... would build their own store[s] using their own marketing scheme[s] and layout[s].

> \*　　\*　　\*　　\*　　\*　　\*

Based on [Mitchell's] own description of the use and operation of [big-box] retail facilities, [the Board] find[s] that these secondary users are not "comparable" stores. As [Mitchell] testified, comparable uses would be a Lowe's store or a Walmart—a retailer that builds a [big-box] store for its own use. Secondary users, such as Burlington Coat Factory

and Hobby Lobby stores who use vacated [big-box] stores, are not comparable. (Cert. Admin. R. at 158–60 ¶¶ 26–27 (footnote added).)

The Indiana Board essentially rejected Meijer's sales comparison analysis because Meijer did not establish what another Meijer, or comparable retailer such as Wal–Mart or Lowe's, would have paid for the subject property. This rejection was improper. Indeed, in formulating an estimate of value under the sales comparison approach, an appraiser need only "locate [ ] sales of comparable [ ] *properties* and adjust [ ] the selling prices to reflect the subject property's total value." Manual at 13 (emphasis added). Here, Meijer's appraisal utilized five big-box properties in Indiana that were used for retail purposes both pre- and post-sale. (*See* Cert. Admin. R. at 286–88, 455–58.) Wayne County's cross-examination of Mitchell did not solicit any testimony as to any other sales. (*See* Cert. Admin. R. at 468–543.) Accordingly, it was improper to discount the appraisal's sales comparison approach because "secondary users" purchased vacated big-box properties instead of entities like Wal–Mart.

## II. *The Indiana Board's rejection of Meijer's obsolescence analysis*

■ Obsolescence, a form of depreciation, is the functional or economic loss of value to property, which is expressed as a percentage reduction to an improvement's replacement cost new. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (2004 Reprint) (hereinafter, "Guidelines") (incorporated by reference at 50 I.A.C 2.3–1–2(c)), Bk. 2, App. F at 4. For instance, functional obsolescence (a loss of

---

**6.** A "big-box property" is any free standing building in excess of 50,000 square feet with minimal interior divisions that is used for retail purposes. As noted by the Indiana Board, Mitchell's appraisal states that these properties were both constructed and occupied by large-scale retailers such as Wal–Mart, Target, Meijer, Home Depot, Lowe's, Sam's Club, and Costco. (*See* Cert. Admin. R. at 158–59 ¶ 26, 247.)

value caused by internal inutilities) could be caused by design defects, the need for modernization, a superadequacy, or changes in the tastes of potential buyers. *Id.* In contrast, external obsolescence (a loss of value caused by factors external to the property) may be caused by an oversupply of the type of space it provides, light or noise pollution, crime, or inharmonious land use. *Id.* at 4, 13.

During the Indiana Board hearing, Mitchell explained that Meijer's property, like most other big-box retail properties within its market, experienced a significant, but temporary, amount of external obsolescence *due to the limited number of potential buyers and an oversupply of such properties in the market.* (*See* Cert. Admin. R. at 247–49, 542–43.) According to Mitchell, the overall size of these properties limited their marketability, while the market glut was primarily caused by two other factors: 1) the dynamic nature of the retail industry (e.g., the rapid transition from strip malls to power centers); and 2) the business practices of certain retailers (i.e., their increased building of larger big-boxes and abandonment of smaller big-boxes before the expiration of those properties' physical lives). (*See* Cert. Admin. R. at 247–49, 286, 430–35.) Finally, Mitchell explained that the majority of the obsolescence in the big-box retail market occurs immediately; thus, even brand new big-box stores experienced an immediate loss in value. (*See* Cert. Admin. R. at 268–69, 505–08.)

The Indiana Board rejected Mitchell's obsolescence analysis because it did not believe Meijer's property was subject to the "market forces" that caused big-box properties to experience a loss in value.

*See supra* pp. 1135–36. Specifically, the Indiana Board stated:

> [Mitchell] did not testify that Meijer stores are typically outgrown quickly and close in a short period of time. More importantly, there was no evidence that the subject store is too small for its current use [or that it] must be abandoned for a larger facility. Thus, while [Mitchell] bases his entire obsolescence valuation on circumstances that may exist in the retail market in general, [Meijer] presented no evidence that these market trends presently impact or affect the Meijer store at issue in this appeal or even Meijer stores in general.

(Cert. Admin. R. at 162–63 ¶ 32 (footnote omitted).) The Indiana Board therefore reasoned that the factor causing the obsolescence in big-box properties could not possibly affect Meijer's store until it was closed and offered for sale. (*See* Cert. Admin. R. at 161–62 ¶ 31.) Thus, the Indiana Board rejected Mitchell's obsolescence analysis because it believed that he failed to link the factor that allegedly caused obsolescence to properties in the big-box market (i.e., the abandonment of stores in order to build larger facilities) to Meijer's property. The Indiana Board's rejection, however, is not supported by substantial evidence.[7]

In the case at bar, Mitchell repeatedly testified that the two factors causing the obsolescence to the subject property were the limited number of buyers for properties of this size and an oversupply of big-box properties within the retail market. *See supra* pp. 1137–38. Wayne County presented no evidence or argument that refuted that testimony. (*See* Cert. Admin. R. at 468–543.) Rather, Wayne County

---

**7.** "[E]vidence will be considered substantial if it is more than a scintilla and less than a preponderance or if it would be accepted as adequate to support a conclusion by a reasonable mind." *French Lick Twp. Tr. Assessor v. Kimball Int'l Inc.,* 865 N.E.2d 732, 739–40 n. 14 (Ind. Tax Ct.2007) (citation omitted).

simply argued that applying a 65% obsolescence adjustment to a two-year old building just seemed improper on its face. (*See* Cert. Admin. R. at 613 (stating "it's a pretty sad day from an assessment standpoint when you can have a building that's built and within two years have approximately 70% obsolescence on that building").) There is, however, no *per se* relationship between a property's age and the presence of obsolescence; obsolescence is a market based concept. *See, e.g., Meridian Towers E. & W. v. Washington Twp. Assessor*, 805 N.E.2d 475, 478 n. 4 (Ind. Tax Ct.2003) (explaining that market value concepts must be used to quantify obsolescence). *See also, e.g.*, Guidelines, Bk. 2, App. F at 8–16. Accordingly, the overall desirability of a property within the market indicates whether obsolescence has caused the property to lose value, not its age. Consequently, the Indiana Board's resolution of this issue was not based on substantial evidence, as Wayne County presented no evidence against which to weigh or discount Meijer's evidence.

This Court has previously stated that *one* of the most effective methods for a taxpayer to rebut the presumption of correctness afforded to an assessment made pursuant to Indiana's assessing guidelines is through the presentation of a market value-in-use appraisal, completed in conformance with USPAP. *See, e.g., Lakes of Four Seasons Prop. Owners' Ass'n v. Dep't of Local Gov't Fin.*, 875 N.E.2d 833, 837 n. 7 (Ind. Tax Ct.2007), *review denied.* Meijer presented such an appraisal. Accordingly, Wayne County needed to present some other market-based evidence that impeached Meijer's appraisal and supported its own assessment. Wayne County presented no such evidence. Consequently, Meijer established that the actual market value-in-use of its property for the years at issue was $6,300,000.

## CONCLUSION

For the above stated reasons, the final determination of the Indiana Board is REVERSED. The matter is REMANDED to the Indiana Board so that it may instruct the appropriate assessing officials to assess the subject property consistent with this opinion.