**SHELBY COUNTY ASSESSOR,**
**Petitioner,**

v.

**CVS PHARMACY, INC. # 6637–**
**02, Respondent.**

**No. 49T10–1112–TA–96.**

Tax Court of Indiana.

Sept. 23, 2013.

Marilyn S. Meighen, Attorney At Law, Carmel, IN, Attorney for Petitioner.

Paul M. Jones, Matthew J. Ehinger, Ice Miller LLP, Indianapolis, IN, Attorneys for Respondent.

FISHER, Senior Judge.

The Shelby County Assessor challenges the Indiana Board of Tax Review's final determination upholding the 2007 and 2008 real property assessments of CVS Pharmacy, Inc. # 6637–02 (CVS). The Court, finding the final determination proper, affirms.

## RELEVANT FACTS AND PROCEDURAL HISTORY

The property that is the subject of this appeal is a general retail store and pharmacy located in Shelbyville, Indiana. The store was built in 2001 by Hook–SupeRx, Inc. (Hooks), sold upon its completion to SCP 2001A–CSF–19 LLC (SCP), and then leased back to Hooks for operation as a CVS.

The lease agreement between SCP and Hooks indicates that the lease is valid for a twenty-two year term (December 2001 through January 2024), with several renewal options available to Hooks after that. Hooks's monthly lease payments are $27.20 per square foot.[1] Pursuant to the terms of the lease, Hooks is responsible for the property's annual property tax liabilities.

For the 2007 and 2008 tax years, the Assessor assessed the subject property at $2,375,600 and $2,459,700. Believing those values to be too high, CVS filed appeals with the Shelby County Property Tax Assessment Board of Appeals (PTABOA). The PTABOA affirmed the assessments. CVS subsequently filed appeals with the Indiana Board.[2]

On April 19, 2011, the Indiana Board conducted an administrative hearing on CVS's appeals. During the hearing, both CVS and the Assessor agreed that the income capitalization approach was the most reliable method by which to value the subject property. Accordingly, they presented competing income approach calculations with supporting documentation. While the parties' income approach calculations were similar in many respects,[3] they differed in one major aspect: CVS used market rents and the Assessor used contractual rent.

CVS believed that the use of the subject property's contractual rent in the income approach was not appropriate. Indeed, through its expert witnesses, CVS stated that it typically uses sale-leaseback transactions as financing tools; consequently, the lease payments it makes to its lessors pursuant to its leases do not reflect merely the value of the real estate, but rather the broader business value of CVS itself.[4]

---

1. The lease provides that the amount of Hooks's monthly rent gradually decreases over the term of the lease; $27.20 is therefore the "effective" monthly rental payment per square foot. (*See* Cert. Admin. R. at 240–45, 372.)

2. In its final determination, the Indiana Board noted that CVS was not the owner of the subject property; to the extent the Assessor did not dispute CVS's standing to file the appeal, however, the Indiana Board deemed the issue waived. (*See* Cert. Admin. R. at 59 n. 2.)

3. Both parties' calculations used vacancy and expense rates of 1% each. (*See* Cert. Admin. R. at 145, 374.) Moreover, CVS used a capitalization rate of 8%, while the Assessor used a capitalization rate of 7.25%. (*See* Cert. Admin. R. at 146, 374–75.)

4. As CVS's expert witnesses testified, CVS's lease agreement contained a "Section 467" loan provision, indicating special financing. (*See* Cert. Admin. R. at 164, 653–55.) (*See also* Cert. Admin. R. at 372 (where the Assessor's expert witness acknowledges that because the lease provides that the monthly payments decrease over time (*i.e.*, the "Sec-

(*See* Cert. Admin. R. at 466, 472–75, 644–47 (footnote added).) To demonstrate this point, CVS presented evidence showing that twenty-four vacant CVS, Walgreens, RiteAid, and Eckerd Drug stores (nine in Indiana and fifteen throughout the country) were in the process of being marketed to "second-generation tenants" for rent at approximately $10.00 per square foot. (Cert. Admin. R. at 145, 151–56, 467–68.) Thus, explained CVS, the $10.00 per square foot figure represented the actual value of the subject property's real estate. In turn, CVS explained that the "spread" between that figure and the subject property's contractual rent of $27.20 per square foot represented the investor's expected return on its investment in CVS. (*See, e.g.,* Cert. Admin. R. at 472–74, 489, 492, 523–24, 645–47.) Based on the $10.00 per square foot rental figure, CVS claimed that the subject property's assessment should have been only $1,250,000 for both 2007 and 2008.

In contrast, the Assessor, through her expert witness, concluded that the subject property's contractual rent of $27.20 per square foot should be used in the income approach because it reflected "the CVS market." (*See, e.g.,* Cert. Admin. R. at 586–87, 592–93, 608–11.) More specifically, the Assessor provided evidence demonstrating that five other CVS-occupied stores in Indiana also made comparable rental payments pursuant to the terms of their leases. (*See* Cert. Admin. R. at 367–72.) As further support for her conclusion, the Assessor pointed out that the written lease agreement for the subject property 1) stated that it was "a true lease" and not a financing vehicle, despite its "Section 467" provision; and 2) estimated the fair market value of the building as

of December 31, 2001 (the lease's start date) at $3,770,492.03. (*See* Cert. Admin. R. at 184, 283, 569, 575.) Relying on the $27.20 per square foot rental figure, the Assessor requested that the Indiana Board actually *increase* her original assessments to $3,330,000 (for 2007) and $3,470,000 (for 2008).

On November 15, 2011, the Indiana Board issued a final determination upholding the Assessor's original assessments, explaining that it was "not convinced" that either party presented "a more credible or reliable indication of market value-in-use for the subject property than the assessments . . . [originally] established for 2007 and 2008." (Cert. Admin. R. at 81 ¶ 73.) For instance, the Indiana Board stated that while CVS had successfully shown that there was a significant difference between the subject property's market rent ("fee simple rent") and contractual rent ("leased fee rent"), it failed to investigate and understand why the "market" properties were vacant. (*See* Cert. Admin. R. at 79 ¶ 65, 80 ¶ 70.) The Indiana Board explained that this failure, in light of CVS's admission that the reasons why the properties were vacant needed to be considered, "destroyed" the reliability of CVS's conclusion that the $10.00 per square foot figure should be used in the income capitalization approach. (*See* Cert. Admin. R. at 79 ¶ 65.)

The Indiana Board also rejected the Assessor's conclusion that the contractual rent of $27.20 per square foot should be used in the income approach because, with respect to sale-leaseback transactions, Indiana law requires "careful consideration to make sure that only the value of the real estate is assessed and not some other business or investment interest." (Cert.

tion 467" provision), the lease is essentially a loan allowing for a more favorable amortization of payments than a standard loan).)

Admin. R. at 73 ¶ 51 (*citing Grant Cnty. Assessor v. Kerasotes Showplace Theatres, LLC.* 955 N.E.2d 876, 882–83 (Ind. Tax Ct.2011); Ind.Code § 6–1.1–2–1 (2007) (providing that only tangible property is subject to assessment)).) As the Indiana Board explained,

> [s]ubstantial evidence established that CVS regularly operates with the same (or almost the same) kind of sale-lease-back transactions and those transactions involved an investment component. [The Assessor], however, failed to establish the investment component ... was factored out of [her] value conclusion[ ] ... The [Assessor] also failed to establish how merely examining multiple versions of CVS transactions, where all the sale prices and lease payments represent more than just real property rights, legitimately proves anything about general market sales or rents.

(Cert. Admin. R. at 80 ¶ 69.)

The Assessor initiated this original tax appeal on December 27, 2011. The Court heard oral argument on August 17, 2012. Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

■ The Assessor, as the party seeking to overturn the Indiana Board's final determination, bears the burden of demonstrating its invalidity. *See Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.,* 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). Consequently, the Assessor must demonstrate to the Court that the Indiana Board's final determination is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

*Ind.Code* § 33–26–6–6(e)(1)–(5) (2013). In determining whether a final determination of the Indiana Board is invalid, the Court will not reweigh any evidence presented during, or reassess the credibility of any witnesses who testified at, the administrative hearing. *Kerasotes,* 955 N.E.2d at 880.

## LAW

Indiana assesses property on the basis of its "market value-in-use." *See* IND.CODE § 6–1.1–31–6(c) (2013); 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 2; 50 IND. ADMIN. CODE 21–3–3(b) (2007) (*see* http://www.in.gov/legislative/iac/). "Market value-in-use" is defined as the value of a property "for its current use, as reflected by the utility received by the owner or a similar user, from the property." Manual at 2.

## ANALYSIS AND OPINION

■ On appeal, the Assessor asserts that by failing to use the contractual rent of $27.20 per square foot in the income approach, the Indiana Board has completely ignored the subject property's utility as a fully-functioning CVS store. (*See* Pet'r Br. at 1–2.) In other words, the Assessor asserts that because the subject property is tailored specifically to the wants and needs of CVS, its market value-in-use can only be measured in relation to other CVS stores, not to participants in commercial/retail market generally. (*See* Pet'r Br. at 6, 8.) The Assessor accordingly argues

that the Indiana Board's final determination is erroneous and must be reversed.

In its final determination, the Indiana Board explained that CVS provided probative evidence demonstrating that there was a significant difference between the subject property's market rent and contractual rent. (*See* Cert. Admin. R. at 79–80 ¶¶ 68, 70.) The Indiana Board noted that this difference was consistent with CVS's claim that it used sale-leaseback transactions to sell more than just the ownership rights in its properties; rather, it used those types of transactions as a means to generate additional business capital from investors. (*See* Cert. Admin. R. at 79–80 ¶¶ 68–70.) Given this evidence, the Indiana Board found that the Assessor's use of the subject property's contractual rent in her income approach likely was capturing more than the value of the real property (*i.e.*, the "sticks and bricks") in her computation. (*See* Cert. Admin. R. at 80–81 ¶¶ 69–72.) The Indiana Board therefore concluded that it could not give the Assessor's income approach any weight. (*See* Cert. Admin. R. at 81 ¶¶ 72–73.) This Court's case law supports that conclusion. *See Kerasotes*, 955 N.E.2d at 882–83. *See also Stinson v. Trimas Fas-*

*teners, Inc.*, 923 N.E.2d 496, 500–502 (Ind. Tax Ct.2010) (explaining that market value-in-use, "as determined by objectively verifiable market data, is the value of a property *for* its use, not the value *of* its use"); *Meijer Stores Ltd. P'ship v. Smith*, 926 N.E.2d 1134, 1137 (Ind. Tax Ct.2010) (recognizing that the market value-in-use of a property should be measured against properties with a comparable use, as opposed to properties with identical users).[5]

## CONCLUSION

In its final determination, the Indiana Board found that the Assessor's evidence was not probative in establishing that her original assessments of the subject property were incorrect. The Assessor has, on appeal, essentially asked the Court to reweigh her evidence; the Court may not do so. *See Kerasotes*, 955 N.E.2d at 880. The Indiana Board's final determination in this matter is therefore AFFIRMED.

---

5. The Assessor's "real" argument on appeal is that these three Court decisions are wrong. (*See, e.g.*, Pet'r Br. 1–2, 16–22; Pet'r Reply Br.; Oral Argument Tr. at 4–8 (alleging that through its decisions, this Court is impermis-sibly attempting to convert Indiana's market value-in-use system into a fair market value system).) The Court does not agree with the Assessor and stands by its holdings in those cases.