ATTORNEY FOR PETITIONER:
**JOHN C. SLATTEN**
MARION COUNTY ASSESSOR'S
OFFICE
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**PAUL M. JONES, JR.**
**MATTHEW J. EHINGER**
ICE MILLER LLP
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

**FILED**

Sep 30 2015, 12:55 pm

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| MARION COUNTY ASSESSOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1212-TA-00081 |
| | ) | |
| GATEWAY ARTHUR, INC., | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**September 30, 2015**

FISHER, Senior Judge

This case examines whether the Indiana Board of Tax Review erred in reducing Gateway Arthur, Inc.'s real property assessments for the 2007, 2008, 2009, and 2010 tax years (the years at issue). The Court finds that the Indiana Board did not err.

**FACTS AND PROCEDURAL HISTORY**

During the years at issue, Gateway Arthur owned a portion of the Indianapolis retail shopping center known as The Shoppes at County Line Road. Specifically, Gateway Arthur owned six parcels that contained: 1) three buildings with about 270,000 square feet of leasable space; 2) a retention pond; 3) two access roads; and 4) a pylon

sign (hereinafter, "the subject property"). The Marion County Assessor assigned the subject property a total assessed value of $17,426,500 for 2007, $18,112,000 for 2008, $18,112,000 for 2009, and $17,003,100 for 2010.

Gateway Arthur appealed the assessments, first to the Marion County Property Tax Assessment Board of Appeals, and then to the Indiana Board. On May 10, 2012, the Indiana Board held a hearing during which Gateway Arthur submitted an Appraisal, prepared by two Indiana certified general appraisers, Richard Correll and Michael Schlemmer, that valued the subject property under the income approach[1] at $12,800,000 for 2007, $13,800,000 for 2008, $12,900,000 for 2009, and $10,300,000 for 2010.[2] (See Cert. Admin. R. at 643-716.)

In response, the Assessor claimed that the Appraisal should be disregarded because it used a loaded capitalization rate, it failed to account for the actual value of the retention pond, pylon sign, and access roads, and it underestimated the value of the subject property by about $1 million by failing to account for approximately $120,000 in annual property tax reimbursements. (See Cert. Admin. R. at 1696-1700, 1705-11, 1720-21, 1737-38.) (Compare also Cert. Admin. R. at 705 with 934.) To further support his assessments, the Assessor submitted an Income Analysis that valued solely the subject property's three buildings at $20,771,300 for 2007, $22,245,900 for 2008,

---

[1] The income approach, which "is used for income producing properties that are typically rented[, ] converts an estimate of income, or rent, [a] property is expected to produce into value through a mathematical process known as capitalization." 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (incorporated by reference at 50 IND. ADMIN. CODE 2.3-1-2 (2002 Supp.)) at 3.

[2] Correll explained that the Appraisal, which was completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP), was a revision of an earlier appraisal that, among other things, failed to account for certain property tax reimbursements. (See Cert. Admin. R. at 1587-89; compare also Cert. Admin. R. at 706 with 935.)

$18,786,400 for 2009, and $18,975,300 for 2010.  (See Cert. Admin. R. at 946, 1697-99, 1721-22.)  Finally, the Assessor presented documentation indicating that Gateway Arthur purchased the subject property in 2007 for $21,000,000.  (See Cert. Admin. R. at 1443-45.)  The Assessor claimed that his Income Analysis, along with the subject property's 2007 purchase price, supported his assessments because their square foot valuations were within a fairly "decent range[.]"  (See Cert. Admin. R. at 1725-28.)

On October 22, 2012, the Indiana Board issued a final determination in which it explained that despite the fact the Appraisal undervalued the subject property by failing to account for certain property tax reimbursements, it was still probative of the subject property's value.  (See Cert. Admin. R. at 546-47 ¶¶ 55-58.)  The Indiana Board further explained that the Assessor's evidence lacked probative value and, therefore, he did not rebut the Appraisal's valuations.  (See Cert. Admin. R. at 547-50 ¶¶ 59, 61-63, 65-67.)  As a result, the Indiana Board determined that the subject property's value was no more than the Appraisal's stated valuations, "augmented" by $1 million to account for the property tax reimbursements, and ultimately valued the subject property at $13,800,000 for 2007, $14,800,000 for 2008, $13,900,000 for 2009, and $11,300,000 for 2010.  (See Cert. Admin. R. at 550-52 ¶¶ 69-71.)

On December 6, 2012, the Assessor initiated this original tax appeal.  The Court heard oral argument on November 22, 2013.  Additional facts will be supplied as necessary.

### STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity.  Hubler Realty Co. v. Hendricks Cnty. Assessor,

3

938 N.E.2d 311, 313 (Ind. Tax Ct. 2010). The Court will reverse a final determination if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. IND. CODE § 33-26-6-6(e)(1)-(5) (2015).

**ANALYSIS**

The Assessor claims that the Indiana Board's final determination must be reversed because it erred in 1) determining that the Appraisal was probative of the subject property's value, 2) determining that the Assessor's evidence lacked probative value, and 3) increasing Gateway Arthur's requested valuations by $1 million. The Court will address these claims in turn.

**1. The Appraisal's Probative Value**

The Assessor contends that the Indiana Board's determination that the Appraisal was probative of the subject property's value is contrary to law because the Appraisal used loaded capitalization rates to value the subject property, which Indiana's assessment guidelines do not allow. (See Oral Arg. Tr. at 9-14.) Contrary to the Assessor's contention, however, Indiana's assessment guidelines do not prohibit the use of loaded capitalization rates when valuing real property. See generally 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) ("Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.3-1-2 (2002 Supp.)); REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002 -- VERSION A (incorporated by reference at 50 I.A.C. 2.3-1-2), Bks. 1, 2. Rather, they "explain the application of the cost approach in detail[,]" without specifying

4

how the income approach should be applied, because Indiana's assessing officials primarily use the cost approach to value real property. Kooshtard Prop. VI, LLC v. White River Twp. Assessor, 836 N.E.2d 501, 504-05 (Ind. Tax Ct. 2005), review denied; see also generally Guidelines, Bks. 1, 2. But see, e.g., IND. CODE § 6-1.1-4-39(a) (2007) (authorizing assessing officials to use the income approach with "an applicable capitalization method and appropriate capitalization rates" to value certain real property). Therefore, the Indiana Board's determination that the Appraisal was probative of the subject property's value is not contrary to law on this basis.

The Assessor also asserts that the Appraisal lacked probative value because it underestimated the value of the subject property by failing to account for the total income of the retention pond, the pylon sign, and the access road parcels. (See Pet'r Br. at 3-4; Oral Arg. Tr. at 4.) More specifically, the Assessor explains that because developers typically would not "allow people to use [a] sign for free[,]" it was unreasonable for the Indiana Board to assume that Gateway Arthur allowed other retailers in the Shoppes, such as HH Gregg, to use those parcels free of charge. (See Pet'r Br. at 3-4; Oral Arg. Tr. at 20-21.) Although the Assessor had tools to elicit data on such a claim, the record evidence simply does not indicate that Gateway Arthur collected rent from other retailers based on their use of those parcels. (See, e.g., Cert. Admin. R. at 1688-89, 1736-39.) Consequently, the Court declines to find that the Appraisal was not probative of the subject property's value on this basis as well.

### 2. The Probative Value of the Assessor's Evidence

Next, the Assessor claims that the Indiana Board erred in determining that his evidence lacked probative value. More specifically, the Assessor argues that the record

5

evidence does not support the Indiana Board's determinations that a) the capitalization rates used in the Income Analysis lacked probative value, b) the Income Analysis misconstrued the effect of property taxes, and c) the subject property's 2007 purchase price lacked probative value. (See Resp't Br. at 4-6; Oral Arg. Tr. at 4-5.)

### a. The capitalization rates

The Assessor argues that the Indiana Board erred in discounting the Income Analysis based on its use of national power centers' capitalization rates because Gateway Arthur never explained how the use of a different capitalization rate would alter the Income Analysis' stated valuations. (See Pet'r Br. at 5-6.) The certified administrative record, however, reveals otherwise.

During the Indiana Board hearing, Correll testified that the subject property was a "hybrid," having elements of both power and neighborhood centers. (Cert. Admin. R. at 1581-82.) Correll explained that this distinction was important because appraisers attempt to "define where [a property] fits into the universe" before estimating its value because everything (i.e., an investor's perception of a property's risks/returns and, thus, the use of one capitalization rate over another) flows from that definition. (Cert. Admin. R. at 1582.) (See also, e.g., Cert. Admin. R. at 1601-02.) The Assessor, on the other hand, never explained why a capitalization rate for a national power center was applicable to the subject property or even challenged Correll's hybrid center classification. (See Cert. Admin. R. at 1695-1759.) The Indiana Board's final determination, therefore, indicates that the Indiana Board weighed the parties' evidence regarding this issue and ultimately found Gateway Arthur's evidence more persuasive. (See Cert. Admin. R. at 548 ¶ 61 (finding that the "subject property is more properly

6

considered a hybrid center than purely a power center").) Consequently, the Assessor has not shown that the Indiana Board's determination that the Income Analysis lacked probative value based on its use of national power centers' capitalization rates was unsupported by substantial evidence. See Amax Inc. v. State Bd. of Tax Comm'rs, 552 N.E.2d 850, 852 (Ind. Tax Ct. 1990 (defining substantial evidence as that which a reasonable mind might accept as adequate to support a conclusion).

### b. The property taxes

The Assessor also argues that the Indiana Board's determination that the Income Analysis "grossly misconstrued the impact of property taxes on the subject property's [value because it] did not include property taxes in the 25% expense ratio" is not supported by substantial evidence. (See Pet'r Br. at 4-5 (citing Cert. Admin. R. at 548 ¶ 62); Oral Arg. Tr. at 4-5.) As support, the Assessor points out that the record evidence affirmatively indicates that the 25% expense ratio included property taxes. (See Pet'r Br. at 4-5 (citing Cert. Admin. R. at 1439 (providing that the median operating expense for certain shopping centers was 26.41% when property taxes were included and 17.27% when property taxes were excluded)).)

Nevertheless, during cross-examination, the Assessor's representative specifically testified that the 25% expense ratio did not include property taxes. (See Cert. Admin. R. at 1740.) That testimony was neither subsequently retracted nor clarified. (See Cert. Admin. R. at 1740-59.) Consequently, when the Court is faced with conflicting record evidence, as is the case here, it will defer to the Indiana Board so long as a reasonable mind could find sufficient evidence in the record to support that finding. See Hamilton Cnty. Prop. Tax Assessment Bd. of Appeals v. Oaken Bucket Partners,

7

LLC, 938 N.E.2d 654, 657-58 (Ind. 2010). Accordingly, the Court cannot say that the Indiana Board erred in discounting the Assessor's Income Analysis on this basis either.

### c. The 2007 purchase price

The Assessor further argues that the Indiana Board erred when it rejected the subject property's 2007 purchase price of $21,000,000 as evidence of its actual value. (See Pet'r Br. at 4.) The evidence in the administrative record, however, reveals otherwise.

During the Indiana Board hearing, the Assessor presented a computer printout that indicated that Gateway Arthur purchased five of the subject property's six parcels for $21,000,000 in 2006. (See Cert. Admin. R. at 1443-45.) The Assessor explained that although the subject property's original sales disclosure form no longer existed, a taxing official had recorded the information from that form into a computer database. (See Cert. Admin. R. at 1445, 1728-30.) In rebuttal, Gateway Arthur submitted an affidavit and warranty deed that indicated that it purchased the subject property, along with 35 other properties, in a portfolio sale for $423.5 million in 2007, and that it would not have purchased the subject property on a stand-alone basis. (See Cert. Admin. R. at 717-28, 1752.) Correll also testified that when a property is sold as part of a portfolio, an appraiser should ascertain what variables the allocated sales price is based upon (i.e., does it include something more than the "sticks and bricks") before using that sale in a property valuation. (See Cert. Admin. R. at 1596-97.)

The Indiana Board determined that the $21,000,000 purchase price was not probative because the Assessor's computer printout, among other things, failed to indicate who entered the data, failed to include all six parcels, and contained the wrong

8

"sale" and "deed" dates. (See Cert. Admin. R. at 549 ¶ 65.) The Indiana Board, therefore, weighed the parties' evidence regarding the subject property's 2007 purchase price and ultimately determined that Gateway Arthur's evidence was more persuasive. Accordingly, the Court finds no basis for reversing the Indiana Board's rejection of the subject property's 2007 purchase price. See, e.g., French Lick Twp. Tr. Assessor v. Kimball Int'l, Inc., 865 N.E.2d 732, 739 (Ind. Tax Ct. 2007) (explaining that when the Indiana Board understands a taxpayer's evidence and finds that it had probative value, the Court will not overturn that determination absent an abuse of discretion).

### 3. Gateway Arthur's Requested Valuations

The Assessor's final claim is that the Indiana Board exceeded its authority when it increased Gateway Arthur's requested valuations by $1 million for each of the years at issue. (See Pet'r Br. at 1-3; Oral Arg. Tr. at 3-4, 26.) The Assessor explains that once the Indiana Board determined that the Appraisal was flawed, it should have found that the Assessor rebutted Gateway Arthur's prima facie case, not "salvaged" Gateway Arthur's case by correcting the Appraisal. (See Pet'r Br. at 2-3; Oral Arg. Tr. at 32-33; Cert. Admin. R. at 550-51 ¶ 69-71.) The Assessor claims that the Court's case law supports his position. (See Pet'r Br. at 3 (citing Meridian Towers E. & W. v. Washington Twp. Assessor, 805 N.E.2d 475, 480 (Ind. Tax Ct. 2003) (holding that the Indiana Board erred in using a treatise to reject a taxpayer's evidence because the treatise was not introduced into evidence)).) (See also Oral Arg. Tr. at 26-27 (citing Meijer Stores Ltd. P'ship v. Smith, 926 N.E.2d 1134, 1138-39 (Ind. Tax Ct. 2010) (explaining that the Indiana Board's rejection of a taxpayer's evidence "was not based on substantial evidence [because there was] no evidence against which to weigh or discount [the

9

taxpayer's] evidence")).)

The administrative record reveals that the parties agreed that the Appraisal failed to include certain annual property taxes reimbursements. (Compare Cert. Admin. R. at 1706-09, 1711 (where the Assessor asserts that the Appraisal omitted about $120,000 in property tax reimbursements that would have increased the value of the subject property by $1 million annually) with Cert. Admin. R. at 1769-70 (where Correll admits that the Appraisal should have accounted for those property tax reimbursements in its valuations).) The Indiana Board subsequently determined that the undervaluation ranged from $981,193 to $1,047,120 by using the Appraisal's loaded capitalization rates (i.e., 11.46% and 12.23%) to capitalize the omitted property tax reimbursements (i.e., $120,000). (See Cert. Admin. R. at 546-47 ¶ 57, 708.) The Indiana Board's final determination, therefore, indicates that it found the Assessor's position persuasive with respect to this issue, not that it corrected the Appraisal. Accordingly, the Meijer and Meridian Towers cases do not apply here because the Indiana Board's actions were based on, and supported by, the record evidence. See Meijer Stores, 926 N.E.2d at 1138-39; Meridian Towers, 805 N.E.2d at 480. Consequently, the Indiana Board did not exceed its authority by increasing Gateway Arthur's requested valuations by $1 million for each of the years at issue.

## CONCLUSION

For the above-stated reasons, the final determination of the Indiana Board is AFFIRMED.

10