ATTORNEYS FOR PETITIONER:
**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**BRIAN A. CUSIMANO**
ATTORNEY AT LAW
Indianapolis, IN

ATTORNEY FOR RESPONDENT:
**PAUL M. JONES, JR.**
PAUL JONES LAW, LLC
Indianapolis, IN



FILED
Nov 04 2016, 3:59 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| MONROE COUNTY ASSESSOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1509-TA-00029 |
| | ) | |
| SCP 2007-C-26-002, LLC a/k/a | ) | |
| CVS 3195-02, | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**November 4, 2016**

WENTWORTH, J.

On August 19, 2015, the Indiana Board of Tax Review issued a final determination valuing a CVS store in Bloomington, Indiana for purposes of the 2009 through 2013 assessments. The Monroe County Assessor has challenged that final determination, but the Court affirms.

## FACTS AND PROCEDURAL HISTORY

The property at issue in this case is the CVS store located at 1000 North College

Avenue in Bloomington, Indiana. (Cert. Admin. R. at 1895-96.) The store is approximately 13,000 square feet and sits on 1.44 acres of land. (Cert. Admin. R. at 1895-96.)

For the 2009 through 2013 assessments, the Assessor valued the subject property as follows: $3,907,800; $3,856,500; $3,817,100; $3,907,000; and $3,933,900. Believing those values to be too high, CVS filed appeals with the Monroe County Property Tax Assessment Board of Appeals (PTABOA). The PTABOA affirmed the assessments and CVS subsequently filed appeals with the Indiana Board. After consolidating the appeals, the Indiana Board conducted an administrative hearing on the matter in August of 2014.

During the hearing, both CVS and the Assessor presented Appraisal Reports, completed by certified appraisers in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP), valuing the subject property for each of the assessment years at issue. (See Cert. Admin. R. at 247-420, 1897-2143.) Both Appraisal Reports employed the sales comparison, income, and cost approaches to value; nonetheless, they arrived at substantially different values for the subject property. (Compare Cert. Admin. R. at 407-10 with 1903.) In addition to her Appraisal Report, the Assessor also presented a review, completed by a third certified appraiser, critiquing CVS's Appraisal. (See Cert. Admin. R. at 2144-82.)

On August 19, 2015, the Indiana Board issued its final determination in the matter. In the final determination, the Indiana Board first addressed the Assessor's review. The Indiana Board explained that in critiquing CVS's Appraisal Report, the Assessor's review had one primary complaint: it used data from properties that were being used for

a general retail purpose both pre- and post-sale rather than data from properties that were specifically used "for a successful ongoing CVS operation." (See, e.g., Cert. Admin. R. at 166-68 ¶¶ 39, 43, 46, 178 ¶ 77.) (See also, e.g., Cert. Admin. R. at 2148.) The Assessor's review therefore claimed that the CVS Appraisal Report "failed to capture all of the [subject property's] utility received by [CVS]" and therefore merely measured the subject property's market value, not its market value-in-use. (See Cert. Admin. R. at 176 ¶ 73, 178 ¶ 77.) (See also, e.g., Cert. Admin. R. at 2153.)

The Indiana Board determined that the appraisal review carried no weight because its criticism of CVS's Appraisal Report was founded upon a misunderstanding of Indiana's market value-in-use standard. (See generally Cert. Admin. R. at 176-83 ¶¶ 73-89.) More specifically, the Indiana Board explained that pursuant to well-established Tax Court case law:

> a property's market value-in-use should be measured against properties with a comparable use (e.g., general retail or light manufacturing) as opposed to properties with identical users;
>
> it is not improper to consider vacant properties as comparable to occupied properties because market value-in-use measures the value of a property for its use and not of its use; and
>
> a property's market value and market-value-in use often coincide and thus, when determining a property's market value-in-use, it is improper to reject out-of-hand an appraisal that estimates that property's market value.

(See Cert. Admin. R. at 178-80 ¶¶ 79-82 (citing Shelby Cnty. Assessor v. CVS Pharmacy, Inc. # 6637-02, 994 N.E.2d 350, 354 (Ind. Tax Ct. 2013); Millennium Real Estate Inv., LLC v. Assessor, Benton Cnty., 979 N.E.2d 192 (Ind. Tax Ct. 2012), review denied; Meijer Stores Ltd. P'ship v. Smith, 926 N.E.2d 1134 (Ind. Tax Ct. 2010); Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496 (Ind. Tax Ct. 2010)).) Thus, continued the

3

Indiana Board, the appraisal review's ultimate conclusion – that the CVS Appraisal Report was not probative – was incorrect. (See Cert. Admin. R. at 181 ¶ 85, 182 ¶ 88 (rejecting the Assessor's argument that CVS's use of general retail properties was irrelevant to valuing the property or that, in using those properties, CVS was determining something other than the property's market value-in-use).)

The Indiana Board also evaluated the competing Appraisal Reports. The Indiana Board meticulously examined how each party conducted their sales comparison, income, and cost approaches to value. (See Cert. Admin. R. at 160-66 ¶¶ 22-37, 170-75 ¶¶ 54-67.) Then, in a lengthy discussion, the Indiana Board addressed the strengths and weaknesses of each of those approaches within each Appraisal Report. (See Cert. Admin. R. at 183-90 ¶¶ 91-111.) Ultimately, the Indiana Board determined that the values as determined under the CVS Appraisal Report's income approach were the most credible indication of the subject property's market value-in-use. (Cert. Admin. R. at 154-55 ¶ 1, 190 ¶ 112.) Accordingly, the Indiana Board reduced the subject property's value to be consistent with those values. (See Cert. Admin. R. at 165 ¶ 36, 190-91 ¶¶ 113-14 (reducing the subject property's 2009 assessment to $2,456,542; its 2010 assessment to $2,110,000; its 2011 assessment to $2,290,000; its 2012 assessment to $2,380,000; and its 2013 assessment to $2,620,000).)

The Assessor initiated this original tax appeal on September 4, 2015. The Court heard the parties' oral arguments on May 19, 2016. Additional facts will be supplied as necessary.

4

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Accordingly, the Assessor must demonstrate to the Court that the Indiana Board's final determination in this matter is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2016).

## ANALYSIS

On appeal, the Assessor argues that the Indiana Board's final determination must be reversed because it is contrary to law. (See Pet'r V. Pet. Judicial Review Final Determination of Ind. Bd. Tax Review ("Pet.") at 5-6 ¶¶ 15-16, 19-22.) The Assessor also argues that the Indiana Board's final determination must be reversed because it arbitrary and capricious. (Pet. at 7 ¶ 23.)

I.

The Assessor contends that the Indiana Board's final determination is contrary to law and must be reversed because it does not value the subject property in accordance with Indiana's market value-in-use standard. (See, e.g., Pet. at 5-6 ¶¶ 15-16, 19-22; Oral Arg. Tr. at 14.) More specifically, the Assessor argues that the Meijer, Trimas Fasteners, and Millennium cases were wrongly decided by the Tax Court and thus, the Indiana Board's "attachment" to them for purposes of determining a property's market

5

value-in-use is "unreasonable." (See, e.g., Pet'r Br. at 2-3, 8-11.) The Assessor reasons that the Legislature enacted Indiana Code §§ 6-1.1-4-43 and -44 in 2015 to put the Indiana Board on notice that the Tax Court's holdings in Meijer, Trimas Fasteners, and Millennium were "defective" and did not comport with the intended meaning of market value-in-use.[1] (See Pet'r Br. at 2, 9-11.)

This very same argument has already been advanced in – and rejected by – the Tax Court. See Howard Cnty. Assessor v. Kohl's Indiana LP, 57 N.E.3d 913, 916-19 (Ind. Tax Ct. 2016), notice of intent to petition for review filed Oct. 4, 2016. See also Marion Cnty. Assessor v. Simon DeBartolo Group, LP, 52 N.E.3d 65, 68-69 (Ind. Tax Ct. 2016); Marion Cnty. Assessor v. Washington Square Mall, LLC, 46 N.E.3d 1, 9-10 (Ind. Tax Ct. 2015); CVS Pharmacy, Inc. # 6637-02, 994 N.E.2d at 354 n.5 (rejecting the assessor's argument that the holdings in Meijer and Trimas Fasteners were wrong and, that in holding as it did, the Court was "impermissibly attempting to convert Indiana's market value-in-use system into a fair market value system").) Because the Court believes its previous cases correctly explain the market value-in-use standard and that the Court is not the proper arena to change a law, it continues to stand by its analyses in those cases and need not repetitively address the argument in this opinion.

---

[1] The plain language of these statutes limited the use of certain comparable properties in valuing big box stores and nonincome producing commercial properties without implying any change to the market value-in-use standard. See IND. CODE §§ 6-1.1-4-43, -44 (2015). The fact that the Legislature repealed the statutes less than a year after it enacted them, see 2016 Ind. Acts 2987-89, belies the Assessor's claim that the Legislature intended to override the Meijer, Trimas Fasteners, and Millennium decisions.

6

II.

The Assessor also argues that the Indiana Board's final determination must be reversed because it is "muddled, inconsistent . . . [and] doesn't make sense." (Oral Arg. Tr. at 9, 11, 14 (asserting that the final determination's inconsistencies make it arbitrary and capricious).) For instance, she asserts that in its final determination, the Indiana Board stated that the use of "general retail" comparables was proper when estimating a value for the subject property under the sales comparison approach, but then later stated that data from "drugstore/pharmacy" properties might be more appropriate under the cost and income approaches to value. (See Pet'r Reply Br. at 1-3 (comparing paragraphs 79 and 85 of the final determination); Oral Arg. Tr. at 4.) She also contends that the Indiana Board indicated that for purposes of the sales comparison approach "general retail" did not include small neighborhood shopping centers but then allowed CVS to use aggregate data – which included information relating to small neighborhood shopping centers – to support its selection of market rents and cap rates under the income approach. (See Pet'r Reply Br. at 4 (comparing paragraphs 97 and 108 of the final determination); Oral Arg. Tr. at 4-5, 24, 30.) The Assessor insists that given these inconsistencies, "the assessment community doesn't know what it should be doing" because it "doesn't know what market value-in-use means to the Indiana Board." (See Oral Arg. Tr. at 18, 27.)

Through this argument, the Assessor invites the Court to both revisit her first claim that the Tax Court has interpreted market value-in-use incorrectly, (see, e.g., Oral Arg. Tr. at 30-32 (challenging the Court to "tell me how . . . th[ese] different jumbled thoughts value the utility to this CVS" and asserting that "I don't think value has anything

7

to do in property tax cases anymore")), and establish bright-line rules for the application of comparable properties under the various approaches to value. The Court need not do either. See, e.g., Kohl's, 57 N.E.3d at 916-19 (providing in no uncertain terms why the Court's construction of market value-in-use is proper); Trimas Fasteners, 923 N.E.2d at 502 (explaining that because the valuation of property is an opinion and not an exact science, it is up to each party to convince the Indiana Board why its opinion – which includes the use of comparable properties – is more probative).

## CONCLUSION

The Assessor has not demonstrated that the Indiana Board's final determination is either contrary to law or arbitrary and capricious. Accordingly, the Indiana Board's final determination in this matter is AFFIRMED.